**LATCHIS THEATRES OF KEENE, Inc., et al.**

**v.**

**COMMISSIONER OF INTERNAL REVENUE.**

**No. 4820.**

United States Court of Appeals First Circuit.

Aug. 6, 1954.

Bennett Sanderson, Boston, Mass., for petitioners.

Grant W. Wiprud, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to Atty. Gen., on brief), for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The Commissioner of Internal Revenue gave notices to Latchis Theatres of Keene, Inc., and to Latchis Theatres of Claremont, Inc., two closely related New Hampshire corporations having a common ownership, of deficiencies in their respective surtaxes for the year 1946, under § 102 of the Internal Revenue

Code, as amended, 26 U.S.C.A.[1] Upon petitions by the two corporations for redetermination of deficiencies, the Tax Court of the United States consolidated the cases for hearing and decision. The Tax Court rendered a decision in the case of Latchis Theatres of Keene, Inc., that there was a deficiency of $4,577.60 in its § 102 surtax for the year 1946, and a decision in the case of Latchis Theatres of Claremont, Inc., that there was a deficiency of $2,118.64 in its § 102 surtax for the same year. The joint petition now before us, filed by the two corporations, asks us to review these two decisions of the Tax Court.

Our last experience with this particular corporate surtax was in Chicago Stock Yards Co. v. Commissioner, 1 Cir., 1942, 129 F.2d 937. We then thought we understood clearly enough, and so stated, that whether or not the corporation was availed of for the purpose of preventing the imposition of the surtax upon its shareholders involved a finding or inference of fact as to a particular state of mind; and that, if the inference drawn by the Board of Tax Appeals in this regard was supported by substantial evidence, and no error of law appeared, the finding should not be set aside by the reviewing court. We recognized that on the record as a whole the ultimate inference of fact as to forbidden purpose might reasonably, though not necessarily, be drawn. But since we concluded that the Board of Tax Appeals had applied erroneous legal yardsticks, and thus had committed errors of law in arriving at its main subsidiary findings upon which its ultimate inference of forbidden purpose chiefly rested, we remanded the case to the Board for further consideration of its findings and decision. However, upon certiorari, we were unanimously reversed by the Supreme Court of the United States. Helvering v. Chicago Stock Yards Co., 1943, 318 U.S. 693, 63 S.Ct. 843, 87 L.Ed. 1086. The lesson we learned from the opinion of the Supreme Court in that case was that, when the record contained substantial evidence to support the ultimate inference by the Board of Tax Appeals that corporate profits had been accumulated for the forbidden purpose, the reviewing court had better not disturb the decision of the Board of Tax Appeals (now the Tax Court of the United States); it had better forego any finicky refinements in an examination of the subsidiary steps, the mental processes, by which the Board of Tax Appeals arrived at its ultimate finding of fact. Since then, by the 1948 amendment to § 1141(a) of the Internal Revenue Code, 62 Stat. 991, the scope of our review of findings of the Tax Court has been made the same as our review of findings of the district courts in civil actions tried without a jury; that is, the Tax Court's findings of fact cannot be set aside "unless clearly erroneous".

Also, since the date of the Chicago Stock Yards case, this particular corporate surtax has been somewhat stiffened by amendment. Formerly it was provided that the fact that corporate profits are permitted to accumulate beyond the reasonable needs of the business shall be prima facie evidence of a purpose to escape the surtax. In the Revenue Act of 1938, 26 U.S.C.A.Int.Rev.Acts, page 1039, and ever since then, it has been provided that the fact that the corporate profits

1. "(a) *Imposition of tax.* There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation * * * if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following: [herein setting out amount of surtax] * * *

"(c) *Evidence determinative of purpose.* The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary."

have been permitted to accumulate beyond the reasonable needs of the business "shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary." 52 Stat. 483. The report of the Senate Committee on Finance [2] made this explanation of the change: "Under existing law, an unreasonable accumulation is merely prima facie evidence of purpose to avoid surtax upon shareholders. Consequently, it has been argued that the only effect of an unreasonable accumulation is to shift to the taxpayer the burden of going forward with the evidence relating to purpose. Under the amendment, however, it is clear that an unreasonable accumulation puts upon the taxpayer the burden of proving by the clear preponderance of all the evidence submitted that it did not have the purpose of avoidance."

The two petitioning corporations in the present case were incorporated in 1931 under the laws of New Hampshire. They have been engaged since that time in the operation of motion picture and vaudeville theatres in New Hampshire. During 1946 Latchis Theatres of Keene, Inc., operated two theatres in Keene and one in Milford; and Latchis Theatres of Claremont, Inc., operated one theatre in Claremont. Over 90 per cent of the capital stock of the two petitioners was held in equal shares by four Latchis brothers, Spero, Peter, John, and Emmanuel. The buildings in which petitioners operated these theatres were owned by D. Latchis, Inc., another New Hampshire corporation the stock of which was held in the same proportions by the Latchis brothers. In this family group of corporations there were also D. Latchis & Sons, Inc., a Vermont corporation which operated theatres in that state, and a realty company, the Latchis Corporation, which owned the buildings in which the Vermont theatres were located. In addition, the four brothers held the stock of Metropolitan Realty Corporation, and two of the brothers owned as equal partners the Latchis Hotel in Brattleboro, Vt.

█ The affairs of the petitioners were conducted informally. Minutes of meetings of the stockholders or directors were not kept regularly. At the hearing before the Tax Court, there was oral testimony by two of the brothers, Peter and John, testimony which we think the Tax Court accurately characterized as "too vague, general, inferential and indefinite in important respects". Of course, the Tax Court was not obliged to accept as true the testimony by these two stockholders as to the purpose of the accumulations. Helvering v. National Grocery Co., 1938, 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346.

Neither of petitioners has ever declared a dividend since its formation in 1931. At the end of 1945 Latchis Theatres of Keene, Inc., had an earned surplus of $52,671.97. For the year 1946, it reported a net income after taxes of $16,645.82 which in its entirety was added to surplus, making the earned surplus at the end of 1946, $69,317.79. Latchis Theatres of Claremont, Inc., had an earned surplus at the end of 1945 of $20,426.09. For the year 1946 it reported a net income after taxes of $7,704.13, which was added in its entirety to surplus, making the figure of this petitioner for earned surplus at the end of 1946, $28,130.22.

The Tax Court's ultimate findings of fact were as follows:

"Each petitioner in 1946 permitted its earnings or profits to accumulate beyond the reasonable needs of its business.

"Each petitioner was availed of during 1946 for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its earnings or profits to accumulate instead of being divided or distributed."

█ Petitioners' attack is centered on the first of these two findings. If we

2. S.Rep.No.1567, 75th Cong., 3d Sess., Cum.Bull.1939–1, Pt. 2, 790–91.

cannot say that the Tax Court was "clearly erroneous" in finding that each petitioner in 1946 permitted its corporate profits to accumulate beyond the reasonable needs of its business, then under § 102(c) that fact is "determinative" of the existence of the forbidden purpose, for it is not contended that, notwithstanding an accumulation beyond the reasonable needs of the business (if this finding is warranted), petitioners have nevertheless as a matter of law proved by the "clear preponderance of the evidence" that this unnecessary accumulation was for some purpose other than that of avoiding the surtax upon shareholders.

We shall not set out the facts in greater detail, for they are fully and convincingly analyzed in the opinion by Judge Murdock, speaking for the majority of the Tax Court. Particularly, we agree with the following extract from Judge Murdock's opinion:

"The members of the Latchis family, operating as a closely knit group, developed rather extensive business interests of which the two petitioner corporations were but a part. The record indicates that the individuals used the various organizations and particularly the funds of those organizations, including the funds of the petitioners, to suit their own convenience, now to start or aid one activity, again to start or aid another. Apparently, the petitioners were on the receiving end in their early days, until they had gotten started successfully, and then idle funds of the petitioners, even in excess of accumulated earnings, were used at the will of the individuals for any purpose of any part of the various businesses which they were conducting. Those purposes, so far as this record shows, were not germane to the business of the petitioners except as they may have enabled the individuals to build up and strengthen their business domain generally. The Latchis family could have put all of their properties in one corporation and operated all of

their businesses through that corporation. Then the arguments they make here that the earnings of one activity can be retained to aid or develop another phase of the business would have more force. But they chose, instead, to divide their holdings and business activities among a number of separate corporations in order to limit liabilities and perhaps to obtain other benefits. They must be judged by what they did in this respect rather than by what they might have done. Attention must be focused upon the petitioners. The accumulation of the 1946 earnings of the petitioners, on top of the earnings and capital which they already had, can not be justified by various needs and purposes of other interests of the Latchis family businesses."

It is true that Judge Arundell, who tried the case in the Tax Court and who saw and heard the witnesses, dissented from the findings and conclusion of the majority of the Tax Court. The prevailing findings of the Tax Court are thus based upon inferences from the documentary evidence, from the stipulation of facts, and from the transcript of the oral testimony. Petitioners say, therefore, that the majority of the Tax Court were in no better position than we are to draw the correct inferences of fact. Maybe that is so, but it does not follow that we are free to make the findings of fact *de novo*. The Congress has chosen to confide to the trial court (here the Tax Court) the primary responsibility of finding the facts, and we cannot disregard the Tax Court's findings unless they are "clearly erroneous". Holt v. Werbe, 8 Cir., 1952, 198 F.2d 910, 916–917; Jacuzzi Bros., Inc. v. Berkeley Pump Co., 9 Cir., 1951, 191 F.2d 632, 637–638. Of course, in applying this standard, we are entitled to take account of the fact that the majority of the Tax Court did not have the advantage of seeing and hearing the witnesses, and that Judge Arundell, who did, believed the testimony of Peter Latchis and John

Latchis to the effect that they permitted the corporate earnings to be accumulated solely for the purpose of meeting the reasonable needs of the business as they, the responsible officers and directors of the corporations, honestly understood them. Even so, after a review of the entire record, we are not "left with the definite and firm conviction that a mistake has been committed" by the Tax Court in its crucial findings in the case at bar. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

The decisions of the Tax Court are affirmed.