Rupert H. JOHNSON et al., d/b/a R. H. Johnson & Co., Defendants, Appellants,

v.

John C. LARMONDRA, Plaintiff, Appellee.

No. 4928.

United States Court of Appeals
First Circuit.

June 28, 1955.

Paul G. Counihan, Boston, Mass., with whom Edward A. Counihan, III, Boston, Mass., and Richard T. Harris, Boston, Mass., were on the brief, for appellants.

Seymour P. Edgerton, Boston, Mass., with whom Bingham, Dana & Gould, Boston, Mass., was on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is a contract action in which jurisdiction is based upon diversity of citizenship, the plaintiff being a citizen of New Hampshire and the defendants, partners in the brokerage firm of R. H. Johnson & Co., citizens of New York. The case was tried to a district court without a jury, and the court found for the defendants upon one aspect of the controversy and for the plaintiff in the amount of $6,000 upon another. This appeal is taken only from the judgment in favor of the plaintiff. The defendants' sole argument is that certain of the district court's findings of fact, upon which judgment for the plaintiff was premised, are "clearly erroneous". Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A.

As a result of oral negotiations between the plaintiff and the defendant Johnson in the spring of 1949, plaintiff was hired as manager of the Boston office of defendant firm. Plaintiff's Exhibit 1, which was a letter from defendant Johnson to plaintiff dated April 19, 1949, recited that it was written to "confirm [Johnson's] verbal agreement regarding [Larmondra's] association with [the

firm]." In addition to other compensation, Larmondra was "to receive 25% of the profits of the Boston office, statements of which will be made up" monthly. Larmondra indicated his acceptance of this understanding by signature at the foot of the letter. On its face the agreement was incomplete in respect to details important to the issue presented, and without objection testimony was received to elaborate its terms. The district court found that by "profits of the Boston office" was meant the profits from sales made by salesmen attached to the Boston office whether or not the customer resided in that office's assigned territory; that this included sales in which a salesman from the Boston office had substantially participated, even though the final consummation thereof may have been effected by the efforts of someone not from the Boston office. On the other hand, it was found that sales made to customers in the Boston office territory by salesmen attached to the other R. H. Johnson & Co. offices, without substantial participation therein by someone from the Boston office, would not be considered in determining the profits of the Boston office. These findings are not attacked by the parties and are either clearly supported by the evidence or by reasonable inferences therefrom.

In the summer of 1949 Mr. Charles V. Austin, a wealthy, retired businessman who was acting at the time as a salesman for the firm attached to the Boston office, was approached by a representative of a Worcester securities firm. Mr. Austin was asked whether he might personally be interested in purchasing some 5300 shares of stock of the Gardner Trust Co., Gardner, Mass., which represented a large interest in that institution. The district court found upon evidence that Austin, who was not a witness, had said he was not interested but that his firm might be. The Worcester firm then communicated with Mr. Johnson, who bought the block of stock for the firm. On account of this purchase, Mr. Austin received a "finder's fee" of $2,000 from his firm. There was evidence that such a fee is paid to a person who puts a broker "in touch with business", and that it is distinct from a commission. Plaintiff has not received nor does he claim a percentage of this fee. R. H. Johnson & Co. notified its Boston office of the availability of these Gardner Trust shares for sale and some 1300 thereof were sold by Boston office salesmen, the plaintiff receiving under the terms of the agreement 25 per cent of the profits of these transactions.

Late in September, 1949, Mr. Johnson was invited by one of the directors of the Gardner Trust Co. to come to Gardner, Mass., to discuss the possible sale of the remaining Gardner Trust shares held by defendant firm. At this meeting, which lasted some four hours, a sale was consummated to one Frank M. Favor, of Gardner, at a gross profit of $6.00 a share. The directors of the trust company and Mr. Johnson, Mr. Austin, and a Mr. Goldsmith, another salesman attached to the Boston office, who lived with Austin, were present at the meeting. Mr. Johnson was the only person present who testified at the trial below. He explained that Austin and Goldsmith were present at his request because they provided him with transportation to and from the closest railroad station.

Mr. Larmondra left the defendants' employ in August, 1950. He brought this action in October, 1951, alleging in pertinent part that the Gardner "transaction was originated by salesmen of the defendants' Boston office working under the management of plaintiff and was made in the territory of the Boston office; and under the arrangements then in effect between the plaintiff and the defendants, the plaintiff is entitled to 25 per cent commission on the gross profits of this sale and the defendants owe the plaintiff $6,000 on this account."

The district court drew the inference "that the real reason for [Austin's and Goldsmith's] presence was that both were from Central Massachusetts, they were well acquainted with and well regarded by local business men. As the plaintiff has contended, 'they were at

the meeting so that the sale would go through'. \* \* \* [The sale] rested primarily upon the contacts, associations and reputation of salesmen of the Boston office of R. H. Johnson & Co. It was desirable, of course, that someone with high authority be present when the final terms were arranged. Mr. Johnson was present in that capacity. Without the efforts of Austin and Goldsmith, the sale would never have been made. \* \* \* Mr. Johnson himself could not be described as a 'salesman' out of the New York office. He was 'top management' itself. \* \* \* It is the opinion of the court that Johnson was in Gardner as an employer who knew that because of the influence, the reputation and the efforts of the Boston office salesmen, he himself, accompanied by Austin and Goldsmith, could complete the sale and thereby defeat the right of the Boston office manager to his 'override' on commissions earned by local men. \* \* \* [T]he procuring cause of the sale was the groundwork of Mr. Austin and Mr. Goldsmith."

Plaintiff concedes "that there is no detailed evidence of Austin's participation in this sale." He argues "that the inferences from the evidence were justified and that, there being evidence from which those inferences could properly be made, the findings of the District Judge should be affirmed." The defendants contend that the findings upon which the district court based its judgment are unsupported by any evidence and are clearly erroneous.

Rule 52(a) of the Federal Rules of Civil Procedure provides: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." It also provides that "In all actions tried upon the facts without a jury \* \* \* the court shall find the facts specially and state separately its conclusions of law thereon \* \* \*." Although separate findings were not made, the basis of the judgment below appears clearly enough from the opinion of the district court. As to the "clearly erroneous" requirement, although it has been suggested that this standard does not apply to limit an appellate court in the drawing of inferences from undisputed facts, see e. g., Kuhn v. Princess Lida of Thurn & Taxis, 3 Cir., 1941, 119 F.2d 704, 705, the Supreme Court has indicated that such inferences are equally within the ambit of Rule 52(a). United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746. See our discussion of this question in Latchis Theatres of Keene, Inc., v. Commissioner, 1 Cir., 1954, 214 F.2d 834, 837. However, we need not be concerned with this question since, upon detailed review of the findings in light of the record, we are satisfied that certain pivotal findings are clearly erroneous. In the Supreme Court's words, we are "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., supra, 333 U.S. at page 395, 68 S.Ct. at page 542.

Implicitly the trial court found that Johnson's explanation of Austin's and Goldsmith's presence at the meeting was not worthy of credence. This is largely a question of Johnson's credibility which the trial court had a superior opportunity to assess, and we are not prepared to say that disbelief in Johnson's testimony was clearly erroneous. However, such a finding was only negative in character; and with Johnson's testimony in this respect disregarded, the burden was still upon the plaintiff to produce evidence from which a rational inference could be drawn that Austin and Goldsmith substantially contributed to making the sale to Favor. The trial court went on to infer that the real reason for Austin's and Goldsmith's presence at the meeting in Gardner was to ensure through their personal contacts that the sale would go through, and that their efforts were the procuring cause of the sale. These inferences are not justified by the evidence. It is likely that the directors of the trust company had heard independently of the Boston office that

Johnson had acquired the block of Gardner Trust shares and determined to purchase it from him in order to continue their control. It is equally inferable that Austin and Goldsmith were present merely as bystanders, perhaps to watch the "big boss" close a large transaction. There is no testimony in the record that the directors of the trust company were acquainted with Austin or Goldsmith. Plaintiff testified that "Those salesmen were responsible for starting this Gardner Trust transaction. It never would have come to light, so far as I am concerned, unless they had brought the matter to Mr. Johnson's attention. * * * I knew that negotiations were going through between Mr. Johnson, Austin and Goldsmith relative to the consummation of this business." But plaintiff was not present at the Gardner meeting. His testimony, to the extent it does not merely state conclusions, appears to relate to the purchase of the stock by R. H. Johnson & Co. and not to its subsequent resale. The record certainly cannot support an inference that Austin and Goldsmith were the "procuring cause" of the resale to Favor. The district court said that Mr. Johnson was not a salesman but was "top management". It is true that he was top management, but it by no means follows that Johnson could not have made the particular sale to Favor. Plaintiff concedes that the sale was consummated by Johnson. There was evidence that another partner had made sales in the Boston office territory upon which no commission was paid to the plaintiff. There was no evidence that Johnson was forbidden to make sales or that he never before had effected a large sale personally.

In accordance with the parties' agreed interpretation of the contract, plaintiff would have been entitled to a commission on the Gardner Trust transaction if salesmen attached to the Boston office had contributed substantially to the sale. There is no evidence in the record upon which the district court could reasonably have inferred that Austin and Goldsmith contributed to the sale in any significant manner. Plaintiff might have introduced testimony of any of the persons other than Johnson who were present at the meeting in Gardner but failed to do so. Plaintiff has failed to prove that the transaction was not solely the result of Johnson's efforts.

The judgment of the District Court is vacated and the case is remanded to that Court for the entry of judgment for the defendants.