AMERICAN METAL PRODUCTS COR-
PORATION, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

ADLER METAL PRODUCTS CORPO-
RATION, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

Nos. 16605, 16606.

United States Court of Appeals
Eighth Circuit.

March 29, 1961.

B. L. Liberman, and Gene M. Zafft, St. Louis, Mo., for petitioners.

Burt J. Abrams, Atty., Dept. of Justice, Washington, D. C., for respondent. Abbott M. Sellers, Acting Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Washington, D. C., were with him on the brief.

Before SANBORN, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The ultimate question we have for determination in this proceeding to review the decisions of the Tax Court, is whether American Metal Products Corporation was availed of during 1952, 1953 and 1954, and Adler Metal Products Corporation was availed of during 1952 and 1954 for the purpose of avoiding the imposition of the surtax, or "income tax" upon their respective shareholders by permitting earnings or profits to accumulate beyond the reasonable needs of the business instead of being divided or distributed within the meaning of § 102 Internal Revenue Code 1939, 26 U.S.C.A. § 102, and §§ 531–537 Internal Revenue Code 1954, 26 U.S.C.A. §§ 531–537.[1]

The Commissioner had made determination of deficiencies as follows:

|  | Adler | American |
|---|---|---|
| 1952 | $ 9,672.25 | $11,028.33 |
| 1953 | 16,490.75 | 10,263.06 |
| 1954 | 11,193.94 | 9,401.90 |
| Totals | $37,356.94 | $30,693.29 |

The asserted deficiencies resulted from (1) finding that petitioners had been availed of for the purpose of avoiding imposition of the surtax upon the shareholders and (2) payment of excessive rents in each of the years in question.

The Tax Court sustained the Commissioner in part and found that Adler was availed of during each of the years 1952 and 1954 and that American was availed of during each of the years 1952, 1953 and 1954 for the purposes proscribed by the statutes.[2] The rent issue was resolved in favor of petitioners. The Tax Court found deficiencies accordingly, as follows:

|  | Adler | American |
|---|---|---|
| 1952 | $ 3,152.25 | $ 8,420.33 |
| 1953 | | 7,655.06 |
| 1954 | 4,729.35 | 6,793.90 |

The two basic contentions presented by petitioners are, (1) The Tax Court erred in holding that the ultimate burden of proof was upon petitioners to prove that they were not availed of for an improper purpose, and that compliance with § 534 could only shift a limited burden of proof pertaining to accumulations beyond the reasonable needs of their businesses; (2) The Tax Court erred in holding that the petitioners did not reasonably need for their businesses and proposed modernization and expansion, amounts in excess of the accumulated earnings and profits available to them at the beginning of the taxable years in question and in holding that petitioners were availed of for the purpose of preventing the imposition of the surtax, or "income tax" upon their shareholders.

After giving careful consideration to the record in its entirety, we are firmly persuaded that the burden of proof issue, resting as it does on § 534 of the 1954 Code,[3] need not be resolved on this review. Even assuming, without decid-

1. We shall hereafter sometimes refer to American Metal Products Corporation and Adler Metal Products Corporation, respectively, as "American" and "Adler" and sometimes as "petitioners."

2. There was actually a *decrease* in the surplus account of Adler for the year 1953.

3. "§ 534. Burden of proof.

"(a) General rule.—In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the bur-

ing, that the burden of proof was on the Commissioner, we conclude from the record as a whole that there was substantial probative evidence to support the Tax Court's findings, both as to an unreasonable accumulation of earnings, and accumulation for the purpose prohibited by the statute. Cf. Kerr-Cochran, Inc. v. Commissioner of Internal Rev., 8 Cir., 253 F.2d 121, 125; I. A. Dress Co. v. C. I. R., 2 Cir., 273 F.2d 543, certiorari denied, 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed. 2d 1011; Smoot Sand & Gravel Corporation v. C. I. R., 4 Cir., 274 F.2d 495, 504, certiorari denied 362 U.S. 976, 80 S. Ct. 1061, 4 L.Ed.2d 1011.

Before reaching the question of the reasonableness of the accumulations, we accord attention to background information deemed necessary to a proper understanding and disposition of this primary issue.

Adler and American, Missouri corporations, were incorporated on November 4, 1927 and October 25, 1934, respectively. Originally, each had an authorized capital of $10,000. Subsequently, the authorized capital was increased by issuance of stock dividends so that since November, 1940, Adler and American have had capital stock issued and outstanding of $220,-000 and $105,000, respectively. At the beginning of the first taxable year in question, 1952, in addition to this prior capitalization of earnings and profits, Adler had an accumulated surplus of $646,-935.92 and American a surplus of $455,-961.54. During the three taxable years involved in this proceeding all of the stock of Adler, except qualifying shares,

was owned by Jack Adler, and of the 1,050 shares of American, Jack Adler owned 840 shares, Mary Ann Adler (Jack's wife) 105 shares, and Edward A. Adler (Jack's brother) 105 shares. Jack has been president and chief executive officer of both corporations throughout the entire existence of each.

Adler manufactures and sells filing cabinets and steel items or equipment used in the cabinets, selling to American, which purchases all of its products from Adler, and to dealers and retailers. American is strictly a sales corporation, being primarily a retailer, although making some sales to dealers. Since 1942 and during the three years under consideration, petitioners' operations were carried on in a building owned by Jack Adler located at the corner of Laclede and Vandeventer Avenues in St. Louis, Missouri.

The balance sheets for each of the corporations for the years 1951 to 1954, and statements of their sales, inventories, receivables and reserves for the years 1946–1954 are all correctly incorporated in the opinion of the Tax Court (found at 34 T.C. No. 10). Appropriate reference will be made to this data throughout this opinion in demonstrating that the decisions of the Tax Court were correct and must be affirmed.

We first review briefly the statutes which are pertinent here:

Section 102(a) of the 1939 Internal Revenue Code and §§ 531, 532 of the 1954 Code, impose a penalty tax upon "accumulated taxable income," to be assessed to corporations "formed or availed of for

---

den of proof with respect to such allegation shall—

    *       *       *       *       *

"(2) if the taxpayer has submitted the statement described in subsection (c), be on the Secretary or his delegate with respect to the grounds set forth in such statement * * *

    *       *       *       *       *

"(c) Statement by taxpayer.—Within such time * * * after the mailing of the notification [informing taxpayer that proposed notice of deficiency includes an amount with respect to the accumulated earnings tax imposed under § 531]

* * * the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business."

There is no comparable section in the 1939 Code, but by amendment to § 534 in 1955, the above provisions were made retroactive and applicable to cases tried on the merits after 1955. See Act of August 11, 1955, c. 805, 69 Stat. 689, 690, §§ 4, 5, 69 Stat. 690, 691.

the purpose of avoiding the income tax with respect to its shareholders," by permitting earnings and profits to accumulate.

Section 533 of the 1954 Code [4] further provides:

"(a) For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary."

Section 537 of the 1954 Code provides that for purposes of the tax, the term "reasonable needs of the business" includes reasonably anticipated needs of the business.[5]

Coming to the issues before us, while the ultimate determination concerns the presence of a purpose to avoid income tax upon shareholders, the real controversy, as perhaps is the situation in most cases of this type, concerns the presence or absence of a valid business reason for accumulating earnings. Simply stated, the petitioners contend there was a valid, existing business reason—the Tax Court found there was not. More particularly, as grounds for their contention that the business requirements of the corporations necessitated accumulation of these surpluses, the petitioners alleged in their statements (designed to comply with § 534 of the 1954 Code) that a plan was evolved to vastly expand the facilities of the two corporations, that a large demand existed for filing cabinets and that accordingly, the inventories of Adler and American should be increased to $471,250 and $375,000, respectively. Additionally, the statements alleged that the sum of $400,000 would be required by Adler for the purpose of replacing obsolete plant equipment and machinery, and the sum of $200,000 for the purpose of repair and addition to Adler's plant. As to American, in addition to the $375,000 for inventory expansion, it was alleged that the sums of $200,000 for expanded accounts receivable, $200,000 for plant expansion and additional warehouses, and $150,000 for establishment of a printing plant and advertising program would be required. According to corporate minutes found in the record, these plans for expansion were conceived in 1947. However, it stands conceded, without serious dispute, that as of the time of the trial before the Tax Court in December, 1958, none of these plans had been carried out in any specific form whatsoever. Petitioners' explanation for the delay in planned expansion rested solely upon a contention that a serious steel shortage had existed, asserting that during the taxable years in question, the shortage was brought about by the Korean conflict which prevented Adler from obtaining steel in a sufficient quantity to supply Adler and American needs, which in turn resulted in loss of prospective sales, thus prejudicing the plans for expansion.

From the record it appears that the issues were submitted to the Tax Court on numerous exhibits, a stipulation of facts offered jointly, and the testimony of Jack Adler and several other witnesses presented by petitioners. In this posture, the argument is here advanced that the record is void of any evidence which impeaches or contradicts the amounts calculated by petitioners to be necessary for their stated purposes. Boiled down, petitioners' contention is that there is no evidence to support the findings and conclusion of the Tax Court. This attack cannot be sustained in the face of controlling principles of law. The Tax Court, as trier of the facts, was not obliged to accept as true Jack Adler's testimony bearing upon the intention and purposes of the corporations, which for all practical purposes were owned and controlled by him. Helvering v. Nat. Grocery Co., 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346; Latchis Theatres of Keene v. Commissioner of Int. Rev., 1

---

4. Similar provisions appear in § 102(c) of the 1939 Code.

5. The 1939 Code contains no similar provision.

Cir., 214 F.2d 834, 836. We do not try the issues de novo, which, in effect, petitioners would have us do. See Helvering v. Nat. Grocery Co., supra, 304 U.S. at page 294, 58 S.Ct. at page 938. Where, as here, it is clearly demonstrated that the Tax Court reached its findings and conclusions upon a fair appraisal of all of the evidence, our function is to determine whether the Tax Court's findings and ultimate decisions are supported by substantial evidence upon the record as a whole, and are not against the clear weight of the evidence or induced by an erroneous view of the law. If this question is answered in the affirmative, we have no right to set aside the result below. Sachs v. C. I. R., 8 Cir., 277 F.2d 879, 881, certiorari denied 364 U.S. 833, 81 S.Ct. 63, 5 L.Ed.2d 59; Crown Iron Works Co. v. Commissioner of Internal Rev., 8 Cir., 245 F.2d 357, 360; Kerr-Cochran, Inc. v. Commissioner of Internal Rev., supra, 253 F.2d at pages 124–125; Latchis Theatres of Keene v. Commissioner of Int. Rev., supra, 214 F.2d at page 835.

█ The questions of whether accumulations are in excess of the reasonable needs of the business, and of whether the corporation has been availed of to avoid imposition of surtax on shareholders by accumulating earnings or profits, are essentially ones of fact for the Tax Court's determination on the whole of the particular situation. Kerr-Cochran, Inc. v. Commissioner, supra, 253 F.2d at page 124, and cases there cited. In making this determination the Tax Court is entitled to draw whatever inferences and conclusions it deems reasonable from the facts, Helvering v. Nat. Grocery Co., supra, 304 U.S. at page 294, 58 S.Ct. at page 938, and even though the facts may be stipulated or undisputed, the issue is no less factual in nature. Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 293, 66 S.Ct. 120, 90 L.Ed. 78; Sachs v. C. I. R., supra, 277 F.2d at pages 881, 882.

Tested by the foregoing guides, we are satisfied that the Tax Court's findings have adequate factual support. The numerous circumstances together with inferences reasonably to be drawn therefrom which support the findings and conclusions, are exhaustively reviewed in the Tax Court's opinion, and in our view repetition thereof is wholly unnecessary. Examination of the more pertinent circumstances will suffice to demonstrate the correctness of the result.

1. Although the corporations adopted formal resolutions in January, 1947, showing an intention to expand their facilities and businesses, we find no specificity therein with respect to plans, types of building, machinery, etc. These resolutions establishing the reserve funds do not themselves substantiate the purported objectives.

2. As we have observed, although petitioners had, by adoption of the resolution in January, 1947, indicated the intention to expand, neither Adler nor American had made any commitments or taken any steps toward realization of purposes expressed in the resolution at the time of the hearing before the Tax Court on December 2, 1958. As stated by the Court in Smoot Sand & Gravel Corp. v. Commissioner of Int. Rev., 4 Cir., 241 F.2d 197, at page 202, certiorari denied 354 U.S. 922, 77 S.Ct. 1383, 1 L.Ed.2d 1437, "The intention claimed must be manifested by some contemporaneous course of conduct directed toward the claimed purpose." And see Smoot Sand & Gravel Corporation v. C. I. R., supra, 274 F.2d 495, at pages 497, 498.

3. The record does not conclusively support the assertion that the failure to move forward with expansion was attributable solely to steel shortage as contended by petitioners. Exclusive of general statements of Jack Adler, and several letters from steel companies dated in 1956, there was no evidence to show steel was unavailable to petitioners during all the years since 1946. The income of petitioners from 1946 to 1951, inclusive, exceeded pre-World War II levels, but no effort was made by either corporation to make the alleged contemplated expansion.

4. There was lack of reasonable relationship between petitioners' established course of business and their plans for expansion. Thus the Adler figure of $471,-250 for inventory expansion was more than five times the largest inventory held by it from October 31, 1943 through December 31, 1954. American stated its inventory requirements to be $375,000, whereas it had no closing inventories in 1946, 1947 and 1948, and only nominal closing inventories from 1949 to 1953, inclusive. It had no inventory at the end of 1954.

5. As shown by the analysis of petitioners' surplus accounts, appearing at page 14 of the Tax Court opinion [advance copy slip opinion], Adler's surplus at the end of 1951 amounted to $646,-935.92, and at the end of 1954 amounted to $676,070.27; American's surplus at the end of 1951 was $455,961.54 and at the end of 1954 was $515,027.73. As thus reflected, the Tax Court was fully justified in concluding that the financial position of petitioners at the beginning of and during each of the taxable years under consideration was completely adequate to the take care of their immediate and reasonably anticipated needs.

6. During 1952, 1953 and 1954, Jack Adler was in tax brackets of 77%, 72% and 72%, respectively, with income of approximately $76,500 annually from petitioners for salary and rent. If the corporations had distributed their earnings to Adler and his wife during these years, they would have been subject to additional income taxes of $27,784.90, $43,484.44 and $23,968.30, respectively.

7. During the years in question Adler and American assets were extremely liquid. At the end of 1954, Adler had $813,-978.50 invested in United States Government bonds. Their liabilities were comparatively negligible, and as observed by the Tax Court, the pertinent ratios of current assets to current liabilities were as follows:

|  | Adler | American |
|---|---|---|
| 1952 | 33 to 1 | 21 to 1 |
| 1953 | 26 to 1 | 39 to 1 |
| 1954 | 106 to 1 | 43 to 1 |

Without discussion of other elements such as the fact that both corporations had consistently accumulated earnings, paying small dividends only on three separate occasions since their incorporations, in 1927 and 1934, we are convinced that on the overall aspects of all of the circumstances, there was ample support for the finding that each of the petitioners had permitted earnings and profits to accumulate beyond the reasonable needs of its business, and that Adler was availed of during each of the years 1952 and 1954, and that American was availed of during each of the three years for the purpose prohibited by the statute.

The decisions of the Tax Court are Affirmed.